David M. Kono (8770)
Daniel K. Brough (10283)
BENNETT TUELLER JOHNSON & DEERE
3165 E. Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Facsimile:  (801) 438-2050
Email: dkono@btjd.com, dbrough@btjd.com
*Attorneys for Plaintiff Heather Hunt*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \*

| | |
|---|---|
| HEATHER HUNT, an individual, | |
| Plaintiff, | **COMPLAINT** |
| | **(Jury Trial Demanded)** |
| v. | |
| UNITED HEALTHCARE CORPORATION, a Delaware corporation, | Civil No. 2:11-cv-00445-TS |
| | Judge Ted Stewart |
| Defendant. | |

\* \* \* \* \* \* \*

Plaintiff Heather Hunt, by and through her undersigned counsel, hereby complains against Defendant United HealthCare Corporation and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Heather Hunt ("Hunt") is an individual residing in Maricopa County, Arizona.

2.      Defendant United HealthCare Corporation ("United") is an insurance company incorporated in Delaware.  United maintains its principal place of business in Minnetonka, Minnesota and conducts business in Utah.

3.      Hunt is a beneficiary of the United Healthcare Choice Plus Plan (the "Plan"), a health care plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.  Accordingly, this Court possesses subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.  This Court possesses supplemental subject matter jurisdiction over all other state law claims pursuant to 28 U.S.C. § 1367.

4.      This Court possesses personal jurisdiction over United because United regularly conducts business in Utah and, specifically but without limitation, because United delivered the insurance policy (the "Policy") under which Hunt claims coverage in Utah.

5.      Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the policy under which Hunt claims unpaid benefits was issued in Utah, and because United resides or may otherwise be found in Utah.

## GENERAL ALLEGATIONS

6.      Since her teenage years, Hunt has suffered from a number of severe psychological disorders, including anxiety, depression, obsessive-compulsive disorder, anorexia, and bulimia.

7.      Hunt's health condition has caused her a number of serious health problems, both physical and emotional.

8. In late 2005, Hunt began a course of outpatient therapy for her health condition. After ten months of such therapy, and on the advice of her therapist, Hunt began to consider more intensive, inpatient care.

9. In mid-2006, Hunt checked into an inpatient care facility to receive treatment for her condition. However, when after only one day it became apparent that her rehabilitation would require more than the facility's initial two-week estimate, Hunt abandoned therapy to return home and care for her children.

10. In late 2007, Hunt moved with her family to Arizona, where she continued outpatient therapy.

11. Despite the therapy she received, Hunt's worsening condition, as well as the advice she received from treating physicians and therapists, led Hunt to check into Remuda Ranch ("Remuda"), an inpatient care facility in Wickenburg, Arizona.

12. Prior to Hunt's admission to Remuda, Hunt's husband contacted United specifically to confirm that Hunt's stay at, and treatment by, Remuda would be covered under the Plan and Policy.

13. The United representative with whom Hunt's husband spoke assured him that Hunt's stay and treatment would be covered under the Plan and Policy.

14. Hunt received treatment at Remuda for approximately 45 days. During the interim, while Hunt was awaiting final confirmation of coverage, Hunt personally paid for her treatment, in an amount totaling not less than $103,000.00.

15. Nevertheless, in August 2008, Hunt received notice from Remuda that United Behavioral Health ("UBH"), a division of United charged with making coverage determinations for mental health services, had denied coverage.

16. By the time that Hunt received the August 2008 notice from Remuda, UBH had already completed a "first level urgent appeal"—consisting of nothing more than a telephone conversation between a third-party physician affiliated with UBH, but who had never seen or examined Hunt, and Remuda—and upheld the original denial.

17. In March 2009, Hunt received an additional letter from UBH stating that UBH had completed a second-level review and upheld its original denial of coverage.

18. In approximately June 2009, UBH engaged in another round of appellate review resulting in an additional denial of Hunt's claim.

19. In August 2009, a third-party "Independent External Reviewer" known as Permedion had conducted a final appeal and again denied Hunt's claim.

20. Hunt has therefore exhausted her prelitigation appeals.

21. Permedion denied Hunt's claim on the ground that her stay at Remuda had allowed her to sustain significant improvement, and that Hunt had "regained considerable control over her symptoms and there was no indication that her eating disorder posted a significant threat."

22. Despite Permedion's finding, Hunt continues to suffer considerably from her eating and other psychological disorders, and Remuda's records do not note the type of improvement that Permedion claims.

4

23. Hunt and her family face considerable financial difficulty given that United's denial of coverage has forced them to pay, out-of-pocket, virtually all of Hunt's treatment at Remuda. The prohibitive cost of future treatment, as well as United's persistent denial of coverage, prevents Hunt from receiving additional care.

**FIRST CLAIM FOR RELIEF**
**(Recovery of Benefits under 29 U.S.C. § 1132(a)(1)(B))**

24. Hunt incorporates by this reference the allegations set forth above in the preceding paragraphs as if fully set forth herein.

25. The medical expenses arising out of Hunt's treatment at Remuda Ranch were eligible for coverage under the Plan.

26. By failing to pay for the treatment provided to Hunt as required by the Plan, United has violated ERISA.

27. United's violations have caused damage to Hunt in the form of a denial of payment for medical services rendered to Hunt.

28. Given the severity of Hunt's condition, the strong evidence provided to United during the course of the appellate process by her treating physicians and therapists, the unambiguous coverage for her condition under the Plan, and United's assurance to Hunt's husband that coverage would indeed be available, United demonstrated bad faith by consistently denying coverage.

29. United is responsible to pay Plaintiffs the benefits due under the terms of the Plan, in an amount not less than $103,000.00, together with attorney fees and costs pursuant to 29

U.S.C. § 1132(g) and pre and post-judgment interest to the date of payment of the unpaid benefits.

30. United's conduct in denying coverage to Hunt constitutes willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.

31. Hunt is therefore entitled to a judgment as described in paragraph 1 of the Prayer for Relief.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract)**

32. Hunt incorporates by this reference the allegations set forth above in the preceding paragraphs as if fully set forth herein.

33. In the event the Court determines that ERISA does not govern the Plan, the Policy, or Hunt's claims, Hunt asserts this alternative claim for breach of contract.

34. The Policy constitutes a valid, binding, and enforceable contract between Hunt and United.

35. Hunt complied with all her obligations pursuant to the Policy, and all conditions precedent to United's obligation to fulfill its obligations pursuant to the Policy have been satisfied.

36. Pursuant to the Policy, United is obligated to cover Hunt's expenses incurred in connection with her eating disorder therapy at Remuda.

37. United has breached the Policy by, without limitation, failing to cover Hunt's expenses incurred in connection with her eating disorder therapy at Remuda.

38. As a direct and proximate result of United's breach of the Policy, Hunt has incurred significant damages in an amount to be proven at trial, but no less than $103,000.00.

39. Hunt is therefore entitled to a judgment as described in paragraph 2 of the Prayer for Relief.

### THIRD CLAIM FOR RELIEF
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

40. Hunt incorporates by this reference the allegations set forth above in the preceding paragraphs as if fully set forth herein.

41. In the event the Court determines that Hunt's claims are governed by contract rather than ERISA, Hunt asserts this claim for breach of the implied covenant of good faith and fair dealing.

42. An implied covenant of good faith and fair dealing inheres in the Policy that requires United to refrain from acting in a way that denies Hunt the benefit of her bargain.

43. United has breached the implied covenant of good faith and fair dealing by, without limitation, failing to cover Hunt's expenses incurred in connection with her eating disorder therapy at Remuda.

44. As a direct and proximate result of United's breach of the implied covenant of good faith and fair dealing, Hunt has incurred significant damages in an amount to be proven at trial, but not less than $103,000.

45. Hunt is therefore entitled to a judgment as described in paragraph 3 of the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Hunt prays for relief against United as follows:

1. As to Hunt's First Claim for Relief, which states a claim for violation of ERISA, for Hunt's general, compensatory damages in an amount not less than $103,000.00, the exact amount to be proven at trial, together with pre- and post-judgment interest, and attorneys' fees and costs under 29 U.S.C. § 1132(g).

2. As to Hunt's Second Claim for Relief, which states a claim for breach of contract, for Hunt's general, compensatory damages in an amount not less than $103,000.00, the exact amount to be proven at trial, together with pre- and post-judgment interest, and attorney fees and costs as provided by the Policy or Utah law.

3. As to Hunt's Third Claim for Relief, which states a claim for breach of the implied covenant of good faith and fair dealing, for Hunt's general, compensatory damages in an amount not less than $103,000.00, the exact amount to be proven at trial, together with pre- and post-judgment interest, and attorney fees and costs as provided by the Policy or Utah law.

4. For an award of punitive damages in an amount to be determined at trial.

5. For an award of attorney fees and costs incurred in connection with this lawsuit pursuant to ERISA, contract, Utah law, or any other applicable federal or state law, the exact amount to be proven at trial.

6.	For such other and further relief as the Court shall deem just and appropriate under the circumstances.

## JURY TRIAL DEMAND

Hunt demands a trial by jury of all issues so triable.

DATED this 17th day of May, 2011.

        BENNETT TUELLER JOHNSON & DEERE


         /s/ Daniel K. Brough
        David M. Kono
        Daniel K. Brough
        *Attorneys for Plaintiff Heather Hunt*

Plaintiff's Address
6884 W. Juana Dr.
Peoria, AZ 85385